(Not for publication)                                        (Docket No. 30)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| CHRISTOPHER KLAITZ, WILLIAM BURNS, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil No. 04-529 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon motion by Third-Party Defendants John Bazemore, Spencer Harden, James Kaighn, and James Nicholas seeking dismissal of the Third-Party Complaint, or in the alternative, summary judgment on the claims in the Third-Party Complaint.  For the reasons that follow, the Court will grant the Third Party Defendants' motion.

## I.  BACKGROUND

### A.  Facts

Plaintiff William Burns is currently an inmate in the custody of the New Jersey Department of Corrections, incarcerated at South Woods State Prison in Bridgeton, New Jersey. Plaintiff Christopher Klaitz is a former inmate of the Department of Corrections.

On February 7, 2002, Plaintiffs Christopher Klaitz and William Burns were inmates at the Gloucester County Jail, awaiting transportation to a New Jersey Department of Corrections

facility. (Amended Compl., Statement of Facts, ¶ 1.)  Sometime that morning, Department of Corrections Officers John Bazemore, Spencer Harden, James Kaighn, and James Nichols arrived at the Gloucester County Jail to transport Plaintiffs to the Central Receiving and Assignment Facility in Trenton, New Jersey. (See Exhibit D to Pl. Mem.)  At the time of their arrival, Plaintiffs and another inmate, Joseph Kunz, were waiting in holding cell, which is located in the reception area of the Gloucester County Jail. (See Exhibit A to Pl. Mem. at 3; Exhibit B to Pl. Mem. at 3; Exhibit C to Pl. Mem. at 3).

       1.  *Plaintiff Klaitz*

Once the Department of Corrections Officers arrived at the Gloucester County Jail, Officers Kane, Nichols and Bazemore entered the facility. (See Exhibit D to Pl. Mem.) According to Plaintiff Klaitz and inmate Kunz, Klaitz was then taken from the holding cell by a Gloucester County Corrections Officer and advised that he was "going to get his" and/or that "they really had it in" for Klaitz because he had broken a window in his cell the night before. (See Exhibit A to Pl. Mem. at 4; Exhibit C to Pl. Mem. at 3.)  Two Department of Corrections Officers, which Plaintiffs assert were Officers Nichols and Bazemore, then took Klaitz in handcuffs to the shower area to conduct a routine strip search prior to transport.  Plaintiffs allege that while Klaitz was in the shower area, he was thrown against the wall and beaten for approximately two minutes. (See Exhibit C to Pl. Mem. at 6-7.)  He claims that while the officers were in the process of beating him, he fell and hit his back against a bench. (Exhibit C to Pl. Mem. at 7-8.)  Klaitz also contends that he screamed at the time, and inmate Kunz stated that roughly five Gloucester County Officers were in close proximity to the shower area at the time the alleged beating occurred. (See Exhibit C to Pl. Mem. at 6; Exhibit A to Pl. Mem. at 6.) Likewise, Plaintiff Burns alleged that "they threw Chris in there and you could hear him getting

his butt kicked." (Exhibit B to Pl. Mem. at 6.)  Klaitz was then placed on the bus to Trenton.

Upon his arrival at Trenton, Klaitz allegedly disclosed the beating in a request for medical treatment; however, he contends that the nurse who reviewed the request tore up the note after she put Klaitz's name on the doctor's list and gave him some ibuprofen. (See Exhibit C. to Pl. Mem. at 14.)  However, the medical records from Klaitz's initial intake examination on February 7, 2002 do not contain any reference to the alleged beating or any resulting injuries. (See Exhibit B to Riehm Aff. at 20.) The nurse's notes do not indicate that Klaitz complained of or showed any injuries resulting from an alleged assault, and the physical examination did not reveal any injuries or abnormalities. (Exhibit B to Riehm Aff. at 20-23.)

Following the initial intake exam, Klaitz visited medical staff on several occasions. (See Exhibit A to Reihm Aff.)  On February 17, 2002, Klaitz reported to the medical department that his back was injured on February 7, 2002 when he slipped after being pushed. (Id. at 12.)  On February 21, 2002, Klaitz received treatment for back pains from the medical department at Mountainview Correctional Facility. (Id.)  Klaitz told doctors he had been injured at the County Jail. (Id. at 16.)  The doctor noted that Klaitz had some tenderness near his spine, but he also noted that Klaitz had a normal range of motion and no joint enlargement or tenderness. (Id.)  On February 25, 2002, Dr. Bharatkumar Patel diagnosed Klaitz with a "paravertebral spasm and minimal tenderness." (Id. at 19.)  Shortly thereafter, on March 9, 2002, a nurse saw Klaitz because he complained again of back pains and he again reported that the injury occurred when he slipped and hit his back on the corner of a bench. (Id. at 22.)  Again on March 13 and April 10, 2002, Klaitz reported to medical personnel that he had back pain. (Id. at 25, 32.)  On May 10, 2002, the medical department again examined Klaitz after corrections staff reported that Klaitz was lying in a van complaining that he was unable to move because of back pain. (Id. at 37.)

However, when asked to sit up, Klaitz complied and refused treatment. (Id. at 39.)  After being released from prison, Klaitz sought treatment from his family physician, who diagnosed him with "acute and chronic lumbosacral strain and sprain" and "post injury disc herniations, L 4-5 and L 5-S1. (See Report attached to Exhibit G to Pl. Mem., dated 6/16/03.)

> 2.  *Plaintiff Burns*

On February 7, 2002, after Klaitz left the shower area, the Department of Corrections Officers took Plaintiff Burns to the same shower area and conducted a strip search.  After the search was completed, Burns claims that he was handcuffed, shackled, and placed against a wall next to Klaitz. (See Exhibit B to Pl. Mem. at 7-8.)  Burns alleges that a Department of Corrections Officer then told him to turn around and face the wall. (Burns Aff. ¶ 1.)  When Burns complied, the officer allegedly grabbed Burns by the back of the neck and slammed his face into the concrete wall. (Id.)  Burns claims that the assault caused a lump on his head and that the officers laughed at him.

As a result of the alleged assault, Burns alleges he suffered from migraines, nightmares, difficulty sleeping, constant neck pain, blurred vision and fear of prison guards. (See Exhibit H to Pl. Mem. at No. 11.)  Nevertheless, during Burns's initial intake examination on February 7, 2002, Burns said he did not have bleeding or injuries that required immediate medical attention. (See Exhibit A to Riehm Aff. at 23.)  Likewise, in additional examinations on April 3, 2002, August 22, 2002, and October 14, 2002, Burns did not complain of any injuries incurred as a result of the alleged assault. (See Exhibit A to Riehm Aff.)

**B.  Procedural History**

On February 6, 2004, Plaintiffs Klaitz and Burns originally filed separate and identical complaints.  Likewise, on June 3, 2004, both Plaintiffs filed separate Amended Complaints in

their respective actions.  The Plaintiffs initially brought these actions pursuant to 42 U.S.C. §

1983, alleging violations of the Fourth and Fourteenth Amendments of the United States

Constitution as well as related state constitutional claims.  The named Defendants included the

State of New Jersey, the New Jersey Department of Corrections, the New Jersey Department of

Law and Public Safety, Attorney General Peter C. Harvey of the State of New Jersey (collectively

the "State Defendants"), as well as Gloucester County, Gilbert Miller, the Gloucester County

Sheriff, and Shirleen Llindeborn (collectively the "County Defendants").  Thereafter, the State

Defendants filed a motion to dismiss in lieu of an Answer, on both of the Plaintiffs' Amended

Complaints on the basis of Eleventh Amendment immunity and failure to state a claim.  The

Court granted the motions and dismissed all claims against the State Defendants with prejudice.

As a result, the only remaining claims in the Amended Complaint are Counts IV and V which

allege that the County Defendants subjected Plaintiffs to the excessive use of force and failed to

train and/or supervise their officers properly.

On October 13, 2004, Magistrate Judge Rosen entered an Order consolidating Burns v.

State of New Jersey, et al., Civil No. 04-529 and Klaitz v. State of New Jersey, et al., Civil No.

04-530 under Civil No. 04-529.

Thereafter, pursuant to a Consent Order entered into by Plaintiffs and the County

Defendants on January 27, 2005, the County Defendants filed a Third Party Complaint against

John Bazemore, Spencer Harden, James Kaighn, and James Nicholas seeking contribution and

indemnification.  In response, the Third Party Defendants filed the present Motion to Dismiss the

Third Party Plaintiffs' Complaint, or in the alternative, Motion for Summary Judgment.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court must accept Plaintiffs' allegations along with all reasonable inferences that may be drawn

from them as true.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v.

Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)).  The Court may dismiss

the Complaint only if Plaintiffs can prove no set of facts that would entitle them to relief.

Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research

Foundation, 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).

### B. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R.

CIV. P. 56(c).  In deciding whether there is a disputed issue of material fact, a court must view the

facts and all reasonable inferences in a light most favorable to the nonmoving party.  Anderson v.

Consol. Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002). The moving party always "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving

party bears the burden of persuasion at trial, however, "the burden on the moving party may be

discharged by 'showing'–that is, pointing out to the district court–that there is an absence of

evidence to support the nonmoving party's case."  Id. at 325.  The non-moving party "may not

rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material of fact. Fed. R. Civ. P. 56(e); <u>Fireman's Ins. Co. of Newark, N.J. v. DuFresne</u>, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial' mandates the entry of summary judgment." <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting <u>Celotex</u>, 477 U.S. at 322).

## III. DISCUSSION

The arguments in the Third Party Defendants' motion can be organized into two basic categories.  On the merits, the Third Party Defendants argue that they are entitled to summary judgment as to the Third Party Complaint because the Plaintiffs cannot establish a constitutional violation.  In other words, Third Party Defendants allege that because the Defendants are entitled to summary judgment on the claims in the Complaint, the Third Party Defendants are likewise entitled to summary judgment on the related contribution claim in the Third Party Complaint. Alternatively, Third-Party Defendants argue that the Third Party Complaint should be dismissed because it does not satisfy the relevant notice pleading requirements.  In particular, Third Party Defendants contend that the Third Party Plaintiffs (1) failed to provide sufficient factual allegations in their Third Party Complaint, and (2) erroneously claimed that state tort law statutes provide them with a right of contribution in this matter.

In response, both the Plaintiffs and the Third Party Plaintiffs filed opposition briefs.  The Third Party Plaintiffs argue that the allegations in the Third Party Complaint are sufficient to give Third Party Defendants notice of the claims against them.  In addition, the Defendants/Third

Party Plaintiffs join in the Third Party Defendants' motion to the extent that it alleges that

Plaintiffs' claims cannot withstand summary judgment.

### A. Pleading Requirements

Under Federal Rule of Civil Procedure 8(a), a complaint (or third party complaint) need

only consist of "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a).  The purpose of the complaint is to "give the defendant fair notice of

what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41,

47 (1957); Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 179 (3d Cir. 1988).

Implicit in this formulation "is the notion that the rules do contemplate a statement of

circumstances, occurrences, and events in support of the claim being presented." Toberman v.

Copas, 800 F. Supp. 1239, 1243 (M.D. Pa. 1992) (citing 5 Wright & Miller, § 1215 at 145); see

McCann v. Catholic Health Initiative, Civ. A. 98-1919, 1998 WL 575259, *2 (E.D. Pa. 1998)

("notice pleading does not alleviate the need for some allegations of material fact").  A mere

averment that a plaintiff "wants relief and is entitled to it" is not sufficient. Id.  Put differently,

"[w]here the allegations are so baldly conclusory that they fail to give notice of the basic events

and circumstances of which the plaintiff complains, they are meaningless as a practical matter

and legally insufficient to state a claim." Parisi v. Coca-Cola Bottling Corp. of New York, 995 F.

Supp 298, 300-01 (E.D.N.Y. 1998) (citing Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987))

(other citations omitted).

Applying these notice pleading standards to the instant matter, the Court is not certain

that the Third Party Complaint satisfies the requirements of Rule 8(a).  First, the factual

allegations in the Third Party Complaint are minimal.  The Third Party Plaintiffs identify the

Third Party Defendants, claim an entitlement to contribution, and state that the right to

contribution relates to any potential liability on the underlying complaint.  In that regard, the

Third Party Plaintiffs state that "Plaintiff Christopher Klaitz has sued the defendants/third party

plaintiffs based upon an incident that allegedly occurred in the Gloucester County Jail on

February 7, 2002." (See Third Party Compl. ¶ 6.)  These allegations seemingly do not provide

any detailed notice of the basic events and circumstances of which the Third Party Plaintiffs

complain.  Second, the Third Party Plaintiffs state that the Third Party Defendants are obligated

under the New Jersey Joint Tortfeasors Contribution Act, N.J. Stat. Ann. § 2a:53a-1, et seq., the

New Jersey Comparative Negligence Act, N.J. Stat. Ann. § 2A:15-5.1, et seq., and the New

Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1, et. seq., for their pro rata share of any judgment

against Defendants/Third Party Plaintiffs. (Third Party Compl. ¶ 7b.)  However, neither the Third

Party Complaint nor the underlying Complaint allege any state tort claims against the Defendants

or Third Party Defendants.  As a result, the Third Party Plaintiffs do not have a right to

contribution from the Third Party Defendants pursuant to state tort statutes that merely create a

right of contribution create among joint tortfeasors.  In this situation, the Third Party Complaint

informs the Third Party Defendants that they are seeking contribution for any liability on the

underlying action, but they cite to the wrong source of any such right by relying upon

inapplicable state tort statutes.

Despite this error, the Court notes that courts within the Third Circuit often recognize a

right to contribution in § 1983 cases as a matter of federal common law.  See Miller v. Apartment

& Homes of New Jersey, Inc., 646 F.2d 101 (3d Cir. 1981); Alexander v. Hargrove, Civ. 93-

5510, 1994 WL 444728, *3-4 (E.D. Pa. Aug. 6, 1994) (relying upon Miller and finding that a

federal right to contribution exists for a claim brought under § 1983); Fishman v. DeMeo, 604 F.

Supp. 873, 875-77 (E.D. Pa. 1985) (finding that even though Miller's pronouncement that a

federal right to contribution exists for a §1983 claim was dicta, the district court was still

compelled to follow Miller and find a federal right to contribution for claims brought under

§1983).  In Miller, the Third Circuit recognized, in the context of a § 1982 action for racial

discrimination in housing, that defendants adjudicated to be liable may have the amount of

liability reduced by the amount paid by settling co-defendants.  Ultimately, the Court determined

that the amounts received from the settling defendants must be used to reduce the final award of

damages against the co-defendants who did not settle.  Miller, 646 F.2d at 108 (noting that "[o]ur

decision that federal law determines the availability of contribution in federal civil rights suits

requies us to determine what that rule is where one of two defendants settles with a plaintiff

before a trial").

   After Miller, courts outside this circuit have refused to recognize a right to contribution

under § 1983.  See e.g., Allen v. City of Los Angeles, 92 F.3d 842, 846 n.1 (9th Cir. 1996)

("There is no federal right to indemnification provided in 42 U.S.C. § 1983."); Harris v. Angelina

County, 31 F.3d 331, 338 n.9 (5th Cir. 1994) (noting that most courts have found no right of

contribution under § 1983); Mason v. City of New York, 949 F. Supp. 1068 (S.D.N.Y. 1996

("Although 'courts have struggled with [the right to contribution under § 1983] and have reached

different conclusions,' the Court determines that there is no right to contribution under Section

1983.") (internal citation omitted).  Moreover, there may be some uncertainty as to whether

Miller should be distinguishable from the present situation because, in Miller, the Court

addressed the right to contribution among co-defendants as opposed to the question of whether a

defendant could assert a third party complaint against another party based upon the alleged

violation of the rights of the plaintiff.  See Diaz-Ferrante v. Rendell, Civ. A. 95-5430, 1998 WL

195683, at *3-4 (E.D. Pa. Mar. 30, 1998) (identifying the question of Miller's applicability in the

third-party context, but not analyzing or resolving it); <u>see also</u> <u>Holman v. Walls</u>, 648 F. Supp.

947, 953 (D. Del. 1986) (noting a distinction between situations where the plaintiff in the

underlying action sues (under § 1983) the party against whom contribution or indemnity is

sought and situations where the underlying plaintiff did not).  However, it is clear that <u>Miller</u> has

never been overturned in the Third Circuit, and given the broad deference that cases like <u>Fishman</u>

and <u>Alexander</u> have afforded the <u>Miller</u> decision in situations with different factual postures, the

Court does not find it appropriate to conclude that there is no federal common law right to

contribution in this case.

      Therefore, even though Third Party Plaintiffs cite to seemingly inapplicable state tort

statutes in support of their claim for contribution, the Court finds that this failure should not be

fatal to Third Party Plaintiff's Complaint.  <u>See</u> <u>Unix Sys. Laboratories, Inc. v. Berley Software</u>

<u>Design, Inc.</u>, 832 F. Supp. 790, 803 (D.N.J. 1993) (noting that court is not limited to legal

theories expressed in a complaint if a different legal theory would provide the relief requested).

As a result, the Court will exercise its discretion and order the Third Party Plaintiffs to amend

their Third Party Complaint to state a contribution claim under the federal common law. <u>See</u> Fed.

R. Civ. P. 15(a) (stating that leave to amend shall be freely given when justice so requires);

<u>Wallace v. Systems & Computer Technology Corp.</u>, Civ. A. 95-6303, 1997 WL 602808, *7

(E.D. Pa. Sept. 23, 1997) (noting that "[f]rom its inception, Rule 15 has been given a liberal

interpretation by the federal courts").  Accordingly, the Court will deny the Third Party

Defendants' motion to dismiss the Third Party Complaint on notice pleading grounds.

## B.  Summary Judgment Analysis

      As mentioned above, Third Party Defendants argue, in the alternative, that they are

entitled to summary judgment on the third-party contribution claim because the Plaintiff's claims

cannot withstand a motion for summary judgment and/or a motion to dismiss. To this end, Third Party Defendants make three primary arguments. First, they argue that the Plaintiffs' Amended Complaint erroneously states that their claims arise under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. Because these constitutional provisions do not apply to inmate claims of excessive force, Third Party Defendants claim that Plaintiffs' constitutional claims must fail. Second, the Third Party Defendants argue that even if Plaintiffs' claims are construed under the Eighth Amendment, they must fail because Plaintiff cannot show that (1) "each correctional officer acted with a sufficiently culpable state of mind," or that (2) their "injuries were caused by each specific defendant and were sufficiently serious in relation to the need for force so as to establish constitutionally excessive force." (Third Party Def. Mem. at 19.) Third, the Third Party Defendants argue that summary judgment is appropriate in favor of the Defendants because the uncontroverted medical records demonstrate that Plaintiffs suffered only de minimis injury. The Court will address these arguments in turn.

### 1. Equal Protection and Fourth Amendment Allegations

As noted above, Plaintiffs' Amended Complaints inaccurately state that their excessive force claims arise under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment. However, when interpreting the allegations of a Complaint, "a court is not limited to the legal theories named in the complaint." Unix Sys. Laboratories, Inc. v. Berley Software Design, Inc., 832 F. Supp. 790, 803 (D.N.J. 1993). To the contrary, "the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." Id. (citing O'Boyle v. Jiffy Lube Int'l, Inc., 866 F.2d 88, 93 (3d Cir. 1989)). Here, an examination of the Plaintiffs' Amended Complaint demonstrates that the allegations regarding the unreasonable use of excessive force are more properly raised as an Eighth Amendment claim.

Therefore, rather than dismissing the constitutional claims on grounds that Plaintiffs' mislabeled

them, the Court will analyze those claims under the applicable Eighth Amendment standards.

2. <em>Eighth Amendment Analysis</em>

The Eighth Amendment, made applicable to the states through the Fourteenth

Amendment, prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII.  Because the

State holds prisoners in its custody against their will, the Constitution requires the State to take

some responsibility for an inmate's safety and well-being. See Helling v. McKinley, 509 U.S. 25,

32 (1993).

The standard for analyzing an Eighth Amendment claim contains both an objective and a

subjective component. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The subjective inquiry

asks whether the defendant acted with the requisite level of culpability such that his or her

actions could be characterized as "wanton" conduct. Id. (citing Whitley v. Albers, 475 U.S. 312,

219 (1986)). The definition of wantonness varies depending on the circumstances alleged. See

Davidson v. Flynn, 32 F.3d 27, n.2 (2d Cir. 1994) (citing Wilson, 501 U.S. at 302-03).  However,

in excessive force cases, the subjective "wantonness" inquiry turns on "whether force was

applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to

cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

With respect to the objective element of an Eighth Amendment claim, the inmate must

demonstrate that the defendant's conduct was "objectively harmful enough" to offend

"contemporary standards of decency." Id. at 8. (internal citations and quotation marks omitted).

Factors relevant to measuring the objective component include: (1) "the need for the application

of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the

extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as

reasonably perceived by responsible officials on the basis of the facts known to them"; and (5)
"any efforts made to temper the severity of a forceful response." Whitley v. Albers, 475 U.S. 312,
321 (1986) (internal citations omitted).

    In addition to the subjective and objective elements, the extent of injury may play a role
in the analysis of an Eighth Amendment excessive force claim.  Certainly, the Constitution does
not protect against every "malevolent touch" or "de minimis" use of force. Hudson, 503 U.S. at
9-10; Johnson v. Glick, 481 F.2d 1028, 1033 (1973) ("Not every push or shove, even if it may
later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional
rights.").  However, both the Supreme Court and the Third Circuit have warned that the pivotal
inquiry relates to the nature of the force used and the circumstances under which it was exerted,
rather than the nature or extent of the resulting injuries. See Hudson, 503 U.S. at 9 ("When
prison officials maliciously and sadistically use force to cause harm, contemporary standards of
decency always are violated. This is true whether or not significant injury is evident.") (citation
omitted); Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002) (" . . . the Eighth Amendment
analysis must be driven by the extent of the force and the circumstances in which it is applied;
not by the resulting injuries"); Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000) (" . . . the
Supreme Court is committed to an Eighth Amendment which protects against cruel and unusual
force, not merely cruel and unusual *force* that results in sufficient *injury*. . . . the absence of
objective proof of non- *de minimis* injury does not alone warrant dismissal").

    In the present matter, Third Party Defendants argue that the Court should grant summary
judgment against Plaintiffs because the evidence demonstrates that (1) the defendant corrections
officers acted in a good faith attempt to protect the security and safety of the institution, such that
their conduct was not a wanton infliction of pain, and (2) the Plaintiffs suffered only de minimis

injuries. (Third Party Def. Mem. at 20, 23-24.)  However, the parties present contradictory

evidence on both points.  The Third Party Defendants submit an investigations report by the

Department of Corrections Special Investigations Division which ultimately concludes that

Plaintiffs' allegations of being assaulted are unfounded. (See Exhibit A to Melendez Aff., at 6.)

In addition, Third Party Defendants present the prison medical records for both Plaintiffs, which

demonstrate that Plaintiffs did not complain of any injuries or show signs of acute distress in

their intake exams on the same day of the alleged assaults and also  in some subsequent doctor

visits.  (See Exhibit A to Riehm Aff., at 20; Exhibit B to Riehm Aff. at 1-3.)  Moreover, Third

Party Defendants suggest in their motion papers that, if any force was used during the transfer

process, it was a reasonable amount of force necessary to protect the safety and security of the

institution. (See Third Party Def. Mem. at 19-20.)  In contrast, the Plaintiffs' averments in their

sworn statements suggest that there was no emergent situation or safety risk at the time the

Plaintiffs were allegedly assaulted.  Both men were in a holding cell at the time they were called

into the shower area to be searched prior to transfer.  According to Plaintiffs, they were

handcuffed and shackled as well.  Plaintiff Klaitz states that, in these circumstances, the prison

officials threw his head into the wall and continued "throwing him around and hitting him" for

about two minutes. (Exhibit C to Pl. Mem., at 6-7.)  Similarly, Plaintiff Burns states that "he

could hear [Klaitz] getting his butt kicked" and further that Klaitz's face was red and swollen

after the alleged assault. (Exhibit B. to Pl. Mem., at 6, 8.)  In addition, Burns claims that during

the transport procedure, an officer grabbed Burns by the back of the head and "forcefully shoved

[his] face into the wall." (Burns Aff. ¶ 1.)  In light of this conflicting evidence in the record, the

Court finds that there are genuine issues of material fact relating to the alleged assaults, the

injuries, and the context in which they occurred.  As a result, the Court finds that summary

judgment against Plaintiff would be inappropriate at this juncture.[1]  See Mensinger, 293 F.3d at

649 (finding that it was for the jury to decide whether the plaintiff's "injuries were so minor that

the [defendant's] account of the incident was more credible than [plaintiff's] and/or that the force

used was not of constitutional dimension").  Thus, summary judgment in favor of Third Party

Defendants on the contribution claim in the Third Party Complaint is likewise improper.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny the Third Party Defendants' Motion to

Dismiss Third Party Plaintiff's Complaint, or in the alternative, Motion for Summary Judgment.

The accompanying Order shall issue today.

Dated:    6-30-06                                         s/ Robert B. Kugler

                                                          ROBERT B. KUGLER

                                                          United States District Judge

---

[1] The Court recognizes that the motion for summary judgment at issue in this matter is a motion for summary judgment as to the Third Party Complaint.  However, as noted above, the Third Party Defendants argue that they are entitled to summary judgment on the contribution claim in the Third Party Complaint because the Plaintiff cannot prevail in establishing that Defendants are liable on the claims in the underlying Amended Complaint.  Therefore, the analysis relating to the motion for summary judgment as to the Third Party Complaint necessarily entails an analysis of the merits of the Plaintiff's cause of action against Defendants.

The Court also recognizes that, after the present motion was fully briefed, Plaintiff Burns and the remaining Defendants filed a Stipulation of Dismissal in this matter on December 28, 2005.  Given that the Stipulation does not provide any of the terms of the dismissal and expressly states that the dismissal is without prejudice to the Third Party Plaintiffs' claims, the Court must assume that the Stipulation of Dismissal does not moot or otherwise affect the contribution claim in the Third Party Complaint.