(Not for publication)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| CHRISTOPHER KLAITZ, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil No. 04-529 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by the County of Gloucester, Sheriff Gilbert L. Miller, and Shirleen R. Lindeborn (collectively "County Defendants") for summary judgment against Plaintiff Christopher Klaitz ("Plaintiff") and for the award of independent medical exam ("IME") no-show fees.  Further before the Court is County Defendants' motion to compel Plaintiff to reimburse Dr. Maslow for missed independent medical exams.  Plaintiff's claims, brought pursuant to 42 U.S.C. § 1983, stem from the alleged use of excessive force against him by New Jersey State Department of Corrections officers ("State Officers"), third-party defendants in this action, while Plaintiff was in the Gloucester County Jail.  For the reasons set forth below, the Court will deny County Defendants' motion as to Warden Lindeborn and grant it in all other respects.  Additionally, the Court will grant County Defendants' motion to compel.

1

I.    **BACKGROUND**[1]

    A.    **The Alleged Assault**

Plaintiff Klaitz was an inmate at Gloucester County Jail.  On February 7, 2002, Plaintiff was awaiting transportation to a New Jersey Department of Corrections facility.  Plaintiff alleges that the State Officers assaulted him during a routine strip search in the shower room of the Gloucester County Jail prior placing him on a bus to be transported.

     The shower room is part of a larger space known as the "reception area" or "booking area," which is an open room, approximately twenty-four by forty feet in dimension.  (Pl.'s Stmt. of Facts ¶ 7; Pl.'s Ex. D.)  The area is further divided into holding cells, an office, and the shower room, which is separated from the rest of the reception area by eight foot walls.  The shower room is customarily used for conducting strip searches of inmates prior to transfer.  (Defs.' Stmt. of Facts ¶¶ 48-49.)

    In accordance with this procedure, Gloucester County Jail officers took Plaintiff out of a holding cell and brought him to the reception area where they transferred him to the custody of the State Officers.  (Id. at ¶ 66.)  Warden Lindeborn was in the booking area at this time.  (Id. ¶ 65.)  Upon receiving custody of Plaintiff, the State Officers questioned Plaintiff about an incident involving a broken window.  In the course of this questioning, Plaintiff alleges that one of the State Officers asked him if he was "a bad ass" and then reacted roughly to Plaintiff when he gestured in an effort to explain what had happened.  (Id. ¶ 69.)  Specifically, Plaintiff testified

---

[1] Because the parties are by now familiar with the factual and procedural history of this litigation, the background will not be set forth at length except as necessary for disposition of County Defendants' motions.  The Court hereby incorporates the statements of facts set forth in its prior opinions.

that "they grabbed my hands, put them behind my back and stuck them up to my neck." (Id.)  At that point, the State Officers escorted Plaintiff to the shower room, about twenty feet from Warden Lindeborn's location and out of her view.  Once in the shower room, Plaintiff alleges the State Officers repeatedly punched him, slammed him into the walls, and threw him into a bench, causing his back to make a loud popping sound.  (Pl.'s Stmt. of Facts ¶ 18.)  Plaintiff states that throughout this assault he was crying out for help.  (Id.)

While Plaintiff was in the shower room with the State Officers, Warden Lindeborn was at her desk in the booking area.  (Id. ¶ 20.)  From that vantage point, she testified she could overhear the State Officers giving instructions to Plaintiff.  She stated further that she did not hear any screaming or evidence of an assault in the shower room.  (Id.)  Nevertheless, other inmates in holding cells at the time reported hearing Plaintiff's screams from the shower room.  (Id. ¶ 22.)  At no time while Plaintiff was in the shower room did Warden Lindeborn intervene in the State Officers' conduct towards Plaintiff.  (Id. ¶ 25.)

## B.    Plaintiff's Failure to Attend Scheduled Independent Medical Examinations

In accordance with the scheduling order in this case, County Defendants originally arranged for an IME for the Plaintiff with Gregory S. Maslow, M.D. on June 21, 2007.  (Defs.' Stmt. of Facts ¶ 104.)  County Defendants advised Plaintiff's counsel of this appointment, but Plaintiff failed to appear for or cancel it.  (Id. ¶ 105.)  As a result, Dr. Maslow charged a no-show fee of $300.  (Defs.' Mot. Summ. J. Ex. S.)  In response to County Defendants' request, Magistrate Judge Schneider then ordered Plaintiff to appear for an IME on July 24, 2007, stating that Plaintiff's failure to appear again could result in sanctions.  (Id. Ex. T.)

Nevertheless, Plaintiff again failed to appear for the scheduled appointment.  This time,

3

Dr. Maslow charged a no-show fee of $325.  (Defs.' Stmt. of Facts ¶ 109.)  Magistrate Judge

Schneider again ordered Plaintiff to appear for an IME on August 6, 2007, threatening to

sanction Plaintiff and dismiss his case if he failed to appear a third time.  (Defs.' Mot. Summ. J.

Ex. V.)  Magistrate Judge Schneider also required that County Defendants file a formal motion if

they wanted relief for Plaintiff's conduct.  (Id.)  Plaintiff saw Dr. Maslow on August 6; however,

Plaintiff so far has refused to pay Dr. Maslow for the $625 owed in no-show fees.  (Defs.' Stmt.

of Facts ¶ 112.)  Accordingly, both as part of their summary judgment motion and in a separate

motion to compel, County Defendants ask this Court to order that payment.

###### C.     Procedural History

County Defendants filed their motion for summary judgment and for the award of IME

no-show fees on October 9, 2007.  Plaintiff opposed the motion for summary judgment.  On

October 31, County Defendants followed up with a motion to compel Plaintiff to reimburse Dr.

Maslow for missed IMEs, to which Plaintiff did not respond.  County Defendants also filed a

reply to Plaintiff's opposition.  On November 15, 2007, the third-party defendant State Officers

wrote a letter asking the Court, in the event that summary judgment is awarded to County

Defendants, to also dismiss Plaintiff's claims against them, since in that instance there would no

longer be grounds for seeking contribution from them.

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue

of material fact exists only if "the evidence is such that a reasonable jury could find for the

4

nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  <u>Celotex</u>, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  <u>Id.</u> at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.

## III.   DISCUSSION

In support of their motion for summary judgment, County Defendants argue (1) the State Officers did not use excessive force against Plaintiff on February 7, 2002; (2) even if they did, Plaintiff has failed to adduce evidence that Sheriff Miller or Warden Lindeborn had an opportunity to intervene but failed to do so; and (3) Plaintiff has not shown that Gloucester County had a policy or custom that caused Plaintiff's alleged constitutional violation.  In response, Plaintiff concedes that Sheriff Miller did not have an opportunity to intervene, because

5

he was not present during the alleged incident, but counters that based on Warden Lindeborn's location at that time, she perceived that the State Officers were using excessive force against Plaintiff and therefore failed to intervene despite having an opportunity to do so.  Additionally, for the first time in their reply brief, County Defendants argue that they are entitled to qualified immunity.

A.    **Eighth Amendment Claims**

The Eighth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits "cruel and unusual" punishment.  U.S. Const. amend. VIII.  Because the State holds prisoners in its custody against their will, the Constitution requires the State to take some responsibility for an inmate's safety and well-being.  See Helling v. McKinley, 509 U.S. 25, 32 (1993).

The standard for analyzing an Eighth Amendment claim contains both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The subjective inquiry asks whether the defendant acted with the requisite level of culpability such that his or her actions could be characterized as "wanton" conduct.  Id. (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).  The definition of wantonness varies depending on the circumstances alleged.  See Davidson v. Flynn, 32 F.3d 27, 29 n.2 (2d Cir. 1994) (citing Wilson, 501 U.S. at 302-03).  In excessive force cases, however, the subjective "wantonness" inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).

With respect to the objective element of an Eighth Amendment claim, the inmate must demonstrate that the defendant's conduct was "objectively harmful enough" to offend

"contemporary standards of decency."  Id. at 8 (internal citations and quotation marks omitted).

Factors relevant to measuring the objective component include: (1) "the need for the application

of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the

extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as

reasonably perceived by responsible officials on the basis of the facts known to them"; and (5)

"any efforts made to temper the severity of a forceful response."  Whitley, 475 U.S. at 321

(internal citations omitted).

In addition to the subjective and objective elements, the extent of injury may play a role

in the analysis of an Eighth Amendment excessive force claim.  Certainly, the Constitution does

not protect against every "malevolent touch" or "de minimis" use of force.  Hudson, 503 U.S. at

9-10; Johnson v. Glick, 481 F.2d 1028, 1033 (1973) ("Not every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional

rights.").  Nevertheless, both the Supreme Court and the Third Circuit have warned that the

pivotal inquiry relates to the nature of the force used and the circumstances under which it was

exerted, rather than the nature or extent of the resulting injuries.  See Hudson, 503 U.S. at 9

("When prison officials maliciously and sadistically use force to cause harm, contemporary

standards of decency always are violated.  This is true whether or not significant injury is

evident." (citation omitted)); Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002) ("[T]he

Eighth Amendment analysis must be driven by the extent of the force and the circumstances in

which it is applied; not by the resulting injuries.").

Additionally, the Third Circuit held in Smith that "a corrections officer's failure to

intervene in a beating can be the basis of liability for an Eighth Amendment violation under §

7

1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith, 293 F.3d at 650. There, the court found that the inferior rank of a corrections officer relative to those engaging in an assault does not absolve the observing officer from his or her duty to intervene. Id. County Defendants' motion involves this type of liability, since Plaintiff did not allege that County Defendants physically assaulted him.

### i.      Sheriff Miller

County Defendants are entitled to summary judgment on Plaintiff's claim against Sheriff Miller. Supervisors are not typically liable under § 1983 based solely on supervisory liability. City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978). Rather, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (citations omitted). A defendant can show personal involvement by alleging "personal direction or of actual knowledge and acquiescence." Id.

Plaintiff has conceded that Sheriff Miller was not at Gloucester County Jail at the time of the alleged beating. Moreover, Plaintiff has presented no evidence of any knowledge or action on the part of Sheriff Miller relating to the incident, so summary judgment is appropriate.

### ii.      Gloucester County

County Defendants are also entitled to summary judgment on Plaintiff's claim against Gloucester County because Plaintiff has not adduced evidence of a policy that caused the violation of his constitutional rights. As is the case with supervisors, there can be no claim for respondeat superior liability for a municipality. See Tuttle, 471 U.S. at 824 n.8; Monell, 436

U.S. at 690-91, 694.  Municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of.  Monell, 436 U.S. at 690-91, 694; see also Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir.2003).  A municipality can be held liable based on a theory of failure to train or of independent wrongdoing, but only when the municipality's policy or custom is the "moving force" behind a constitutional violation.  Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006).  To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990).

Plaintiff has provided no evidence that any failure to train County employees had a direct link to the constitutional violation alleged by Plaintiff.  Similarly, Plaintiff has provided no evidence that the implementation of any municipal custom or policy was the cause of any constitutional violation, hence Gloucester County is entitled to summary judgment.

### iii.    Warden Lindeborn

County Defendants are not, however, entitled to summary judgment on Plaintiff's claim against Warden Lindeborn.  County Defendants argue that Warden Lindeborn is entitled to summary judgment since pursuant to applicable policy, Plaintiff was in the exclusive custody of the State Officers at the time of the alleged assault and because "Warden Lindeborn neither witnessed the assault nor was in a position to intervene."  (County Defs.' Br. at 13.)  County Defendants contend that Plaintiff has failed to show that Warden Lindeborn had personal knowledge that excessive force was being used against Plaintiff, and thus she cannot be liable.

County Defendants assert that Plaintiff has not put forth any evidence to dispute these facts.

On the contrary, Plaintiff has adduced sufficient evidence to create a triable issue of fact concerning whether Warden Lindeborn had a "realistic and reasonable opportunity" to intervene on Plaintiff's behalf.  Smith, 293 F.3d at 651.  It is undisputed that if the State Officers assaulted Plaintiff in the manner alleged, Warden Lindeborn would have heard it from her location in the reception area.  (See Defs.' Stmt. of Facts ¶ 97.)  Warden Lindeborn testified that she heard no evidence of an assault in the shower room; Plaintiff testified that an assault occurred and that he screamed for help.  Additionally, Plaintiff offers the testimony of two other inmates who report hearing Plaintiff's cries from their holding cells, not far from Warden Lindeborn's location.

At the summary judgment phase, the Court must draw all inferences in Plaintiff's favor.  Here, accepting as Plaintiff has testified, that he repeatedly cried out for help and that Warden Lindeborn could hear those cries, then she had sufficient personal knowledge to give her a realistic opportunity to intervene.  See Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995) (reversing grant of summary judgment where actual knowledge of constitutional violation on part of defendant police officer could be "inferred from circumstances other than actual sight").  To find otherwise, would permit a corrections officer to willfully ignore her duty to intervene as a means of avoiding liability, in clear contravention of Smith, 293 F.3d at 650 ("[Holding] that a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers.").

Therefore, a question of fact exists as to whether Warden Lindeborn had an opportunity to intervene but failed to do so.  This Court must reserve such disputes for the trier of fact.

**B.      Qualified Immunity**

In their reply brief, County Defendants contend that Warden Lindeborn is entitled to summary judgment on Plaintiff's claim against her based on qualified immunity.  Their failure to raise this argument in their initial motion would normally preclude this Court from considering it, <u>Bayer AG v. Schein Pharm.</u>, 129 F. Supp. 2d 705, 716 (D.N.J. 2001), <u>aff'd</u>, 301 F.3d 1306 (3d Cir. 2002); however, since they plead qualified immunity as a defense in their answer, the Court will entertain the argument.

Government officials who are accused of violating a person's constitutional rights while performing discretionary functions are entitled to qualified immunity.  Qualified immunity shields officials "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  This analysis is two-fold.  First, the court is to assess whether the facts as alleged by the plaintiff amount to a constitutional violation.  If this test is met, the court then determines whether the right is "clearly established."  <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001); <u>Kopec v. Tate</u>, 361 F.3d 772, 775-76 (3d Cir. 2004).  In other words, before engaging in a determination of whether a right is clearly established, the court must first determine whether a constitutional violation has occurred, because "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."  <u>Id.</u> at 776 (quoting <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2002)).

Since, as previously established, Plaintiff has alleged sufficient facts to substantiate claims of Warden Lindeborn's failure to intervene in violation of Plaintiff's Eighth Amendment rights, this Court must progress to the second prong of the analysis and determine whether the

rights were clearly established.  The Supreme Court has determined that such a finding hinges on "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S. at 202.

The Court finds that reasonable officers in Warden Lindeborn's position would have found the State Officers' alleged conduct sufficiently improper such that she would know she was legally required to intervene.  It is well-established that the Eighth Amendment prohibits the use of excessive force against inmates by corrections officers.  <u>E.g.</u>, <u>Whitley</u>, 475 U.S. at 321; <u>Hudson</u>, 503 U.S. at 9 (1992).  As a result, Warden Lindeborn is not entitled to qualified immunity, and County Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim against Warden Lindeborn will be denied.

### C.     Award of No-Show Fees

In accordance with Magistrate Judge Schneider's directive, County Defendants have moved the Court, both as part of their summary judgment motion and by separate motion to compel, to order Plaintiff to pay the no-show fees charged by Dr. Maslow.  Pursuant to Federal Rule of Civil Procedure 16(f), a court may issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)" where a party "fails to obey a scheduling or other pretrial order."  For such a violation, "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).

Interpreting this rule, the Third Circuit has stated that "substantial justification" occurs when there is a "genuine dispute concerning compliance."  <u>Tracinda Corp. v. DaimlerChrysler</u>

AG, 502 F.3d 212, 241 (3d Cir. 2007) (citing Fitz, Inc. v. Ralph Wilson Plastics Co., 174 F.R.D. 587, 591 (D.N.J.1997)).  Determining whether sanctions would be "unjust" involves "a consideration of the degree of the sanction in light of the severity of the transgression which brought about the failure to [comply]."  Id.

Here, it is undisputed that Plaintiff did not appear for the first two scheduled appointments with Dr. Maslow.  Furthermore, Plaintiff has offered no excuse for these omissions – Plaintiff declined to address County Defendants' arguments regarding the no-show fees in his opposition brief and did not file a responsive brief to County Defendants' motion to compel. Consequently, the Court finds that Plaintiff's failure to appear was not "substantially justified" nor would compelling Plaintiff to pay the fees incurred by his omissions be "unjust" within the meaning of Rule 16(f).  While Plaintiff did eventually submit to an IME, his failure to attend the first two necessitated letters and telephone conferences among the parties and the Court. Moreover, Magistrate Judge Schneider's July 12, 2007 order warned Plaintiff that sanctions might be imposed under Rule 16(f) if he did not appear for the second scheduled IME.  As a result, the Court will compel Plaintiff to pay $625 in no-show fees to Dr. Maslow.

**IV.    CONCLUSION**

Based on the foregoing reasoning, the Court will deny County Defendants' motion for summary judgment as to Warden Lindeborn but grant it as to Sheriff Miller and Gloucester County.  Furthermore, the Court will grant County Defendants' motion to compel Plaintiff to reimburse Dr. Maslow for missed IMEs.  An accompanying Order shall issue today.

13

Dated: 1/9/08                                        s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge